IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN WONG, | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-01063** |
| v. | : | |
| | : | **(Judge Rambo)** |
| TIM BETTI, <u>et</u> <u>al.</u>, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the Court are Defendants' motions to dismiss the amended complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 22, 32.)  Also pending before the Court are Plaintiff's motions seeking discovery.  (Doc. Nos. 28, 40.)  For the reasons set forth below, the Court will grant in part Defendants' motions and deem Plaintiff's motions withdrawn.

## I.   BACKGROUND

### A.   The Original Complaint

Plaintiff Steven Wong ("Plaintiff"), who is proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, is a pretrial detainee who was formerly incarcerated at Lackawanna County Prison ("LCP") in Scranton, Pennsylvania.  (Doc. No. 1 at 2.)  On July 7, 2022, while he was incarcerated at LCP, he filed his original complaint against the following Defendants: Tim Betti, the Warden of LCP ("Betti"); the Administration Department of LCP; and Wellpath, the Medical Provider at LCP ("Wellpath").  (<u>Id.</u> at 1, 2–3.)

In his original complaint, Plaintiff asserted that the complained-of-events occurred "at different times" while he was incarcerated at LCP.  (Id. at 4.)

In support, Plaintiff alleged that, in July of 2021, he had a stroke.  (Id.)  He asserted that Defendant Wellpath denied him "help" when he needed "medical care[.]"  (Id.)  In addition, Plaintiff alleged that, on August 9, 2021, he was placed in confinement for fifty (50) days.  (Id.)  Plaintiff asserted, however, that he "had previously served that time[.]"  (Id.)  Plaintiff also asserted that he filed grievances, but that they "went unanswered until [he] finished [his] confinement time[,]" at which point he "received a response back stating that they were sorry and that he should[ not] have been placed in confinement."  (Id.)  Finally, Plaintiff alleged that he had been "[d]enied [his] religious rights" concerning "[his] crucifix necklace." (Id.)

In connection with all of these allegations, Plaintiff asserted claims based upon the conditions of his confinement, inadequate medical care, due process violations, the denial of his religious rights, and the failure to protect him.  (Id. at 5.) Plaintiff also asserted that he "[n]ever received physical therapy" and, because of that, he "suffered in a wheelchair for 7 months."  (Id.)  As for relief, he sought to be transferred to another correctional facility,[1] as well as monetary relief.  (Id.)

---

[1] Plaintiff is no longer incarcerated at LCP.  (Doc. Nos. 34, 35, 38.)

On September 15, 2022, the Court reviewed Plaintiff's original complaint in accordance with the Prison Litigation Reform Act ("PLRA").  (Doc. Nos. 9, 10.) With respect to Defendant Betti, the Court found as follows: that there was a complete absence of allegations that would give rise to a plausible inference that he was personally involved in any asserted deprivation of Plaintiff's constitutionally protected rights (Doc. No. 9 at 6); that, without such allegations of personal involvement, liability could not be imposed against Defendant Betti under Section 1983 (id.); and that, because Plaintiff's original complaint did not show how Defendant Betti was personally involved in the asserted violations, it failed to provide fair notice of Plaintiff's Section 1983 claims or the grounds upon which those claims rested, as required by Rule 8 of the Federal Rules of Civil Procedure (id. at 6–7).

With respect to Defendant Administration Department of LCP, the Court found as follows: that Section 1983 imposes liability upon a person, who acting under color of state law, deprives another person of rights, privileges, or immunities secreted by the Constitution or laws of the United States (id. at 8); and that Plaintiff's original complaint had failed to make this requisite showing against Defendant Administration Department of LCP, as such a defendant is not a "person" for purposes of Section 1983 and thus is not amenable to suit under that statute (id.).

3

And, finally, with respect to Defendant Wellpath, the Court found as follows: that in order for a private company providing health services at a correctional facility to be held liable for the acts of its employees, a plaintiff must show that there was a relevant company policy or custom and that this policy or custom resulted in the asserted constitutional violations (id. at 9); and that Plaintiff's original complaint had not plausibly alleged the existence of any such policy or custom (id.).

Based upon these findings, the Court dismissed Plaintiff's original complaint for failure to state a claim upon which relief could be granted.  (Doc. Nos. 9, 10.)  However, the Court granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Id.)

## B.    The Amended Complaint

On September 27, 2022, Plaintiff filed an amended complaint.  (Doc. No. 12.) Plaintiff names Defendants Betti and Wellpath as the sole defendants (id. at 1, 2–3), and he asserts that the events giving rise to his claims occurred at LCP, "periodically" in 2021 and 2022 (id. at 4).   In support, Plaintiff alleges that Defendant Wellpath "nursing staff ignored [his] complaints of improper healthcare" and that, because of this, he "was forced physically into a stroke."  (Id.)  Plaintiff claims that when he "asked for medical help[,] [he] was confined in medical housing for 50 days."  (Id. (stating that that he was confined because of his "pleas of help, but none was afforded except for isolation").)  Plaintiff alleges that, once "they"

rectified the error and released him from confinement, he "was simply given an apology without any remedy to health or condition." (Id.)  Plaintiff further alleges that he was told by Defendant Betti's "staff that if [he] continued to ask for help, [his] next stop would be 23 hour confinement known as special handling." (Id. (asserting that both he and his family "begged [Defendant] Betti for help," but was "ignored").)  Finally, Plaintiff alleges that, up until he left LCP, he did not receive "proper treatment, and [Defendants] Betti and Wellpath continually ignored all pleas for help." (Id.)

In connection with all of these allegations, Plaintiff asserts that he is in constant pain, emotional distress, and mental anguish. (Id. at 5.)  He sets forth claims based upon "[c]ruel and [u]nusual [p]unishment, "deprivation of liberties," and violations of his "[d]ue [p]rocess [r]ights" and "[e]qual rights."[2] (Id.)  He seeks monetary relief, as well as an investigation into the conduct of Defendants Betti and Wellpath. (Id.)

On October 6, 2022, the Court deemed the amended complaint filed and directed the Clerk of Court to serve a copy of the amended complaint on Defendants. (Doc. No. 13.)  Thereafter, on October 28, 2022, Defendant Betti filed a motion to dismiss the amended complaint, followed by a brief in support. (Doc. Nos. 22, 30.)

---

[2]  Based upon these claims, the Court does not treat Plaintiff's amended complaint as asserting a state-law professional negligence claim.

And, on December 1, 2022, Defendant Wellpath filed a motion to dismiss and brief in support.  (Doc. Nos. 32, 33.)  Plaintiff has filed a brief in opposition to Defendant Betti's motion to dismiss (Doc. No. 27), but not to Defendant Wellpath's motion to dismiss.  In addition, Plaintiff has filed two (2) motions seeking discovery.  (Doc. Nos. 28, 40.)  Plaintiff has not filed a brief in support of either one of those motions, and the time period for doing so has passed.  Thus, the parties' pending motions are ripe for the Court's resolution.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft

v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's

claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

## III.  DISCUSSION

Like his original complaint, Plaintiff has filed his amended complaint pursuant to the provisions of Section 1983, claiming that Defendants violated his constitutional rights while he was incarcerated at LCP.  (Doc. No. 12.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

Here, Defendants have filed motions to dismiss Plaintiff's Section 1983 claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  (Doc. Nos. 22, 32.)  The Court addresses Defendants' motions separately below.

### A.    Defendant Betti's Motion to Dismiss

Defendant Betti has filed a motion to dismiss, asserting two (2) grounds upon which he argues that the amended complaint should be dismissed.  (Doc. Nos. 32, 33.)  The first ground is that Plaintiff failed to exhaust his available administrative remedies, as required by the PLRA, before commencing this suit in federal court. (Doc. No. 30 at 2, 14–19.)  The second ground is, essentially, that Plaintiff's amended complaint fails to plausibly allege a Section 1983 claim upon which relief can be granted.  (Id. at 20–32.)  For the sake of clarity, the Court addresses these arguments separately below.

### 1.     Exhaustion

The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).   In other words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting

Woodford, 548 U.S. at 88).  And the applicable "procedural rules are supplied by the individual prisons."  See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ); see also Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . . "); Woodford, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ").

A prisoner's failure to follow these procedural rules will result in a procedural default of his claims.  See Spruill, 372 F.3d at 230–32 (concluding that the PLRA's exhaustion requirement includes a procedural default component); Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (recognizing this holding in Spruill). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him.  See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes,

practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" <u>Downey</u>, 968 F.3d at 305 (quoting <u>Shifflett v. Korszniak</u>, 934 F.3d 356, 365 (3d Cir. 2019)).

Requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." <u>See</u> <u>id.</u> (citation and internal quotation marks omitted) (alterations added)); <u>Jones</u>, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

Finally, and particularly relevant here, failure to exhaust available administrative remedies is an affirmative defense. <u>See</u> <u>id.</u> at 216. As a result, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." <u>See</u> <u>Rinaldi</u>, 904 F.3d at 268 (citing <u>Ray v. Kertes</u>, 285 F.3d 287, 295 (3d Cir. 2002)). However, "once the defendant has established that the inmate failed

to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See id. (citation omitted).

Here, Defendant Betti argues that the amended complaint reveals "on its face" that Plaintiff failed to exhaust his available administrative remedies at LCP before commencing this suit in federal court. (Doc. No. 30 at 18.) The Court, however, is unpersuaded. Plaintiff's amended complaint does not address whether or not he exhausted his available administrative remedies at LCP before filing this suit. Stated differently, Plaintiff's amended complaint is silent on this issue and, thus, Plaintiff's amended complaint does not reveal the exhaustion defense "on its face."

In addition, the Court emphasizes that the failure to exhaust is an affirmative defense. See Jones, 549 U.S. at 216. Thus, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests" on Defendant Betti. See Rinaldi, 904 F.3d at 268 (citing Ray, 285 F.3d at 295). Plaintiff, in other words, is "not required to specially plead or demonstrate exhaustion" in his amended complaint. See Jones, 549 U.S. at 216; Small v. Camden Cnty., 728 F.3d 265, 268 (3d Cir. 2013) (explaining that the "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff").

Accordingly, for these reasons, the Court will deny Defendant Betti's motion to dismiss Plaintiff's amended complaint to the extent that it argues non-exhaustion under the PLRA.

### 2.      Failure to State a Claim

### a.      Fourteenth Amendment Medical Care

At the time Plaintiff commenced this Section 1983 action, he was a pre-trial detainee at LCP.  (Doc. No. 1 at 2.)  A pretrial detainee's claim of inadequate medical care, like Plaintiff's, arises under the Fourteenth Amendment, rather than the Eighth Amendment.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).  Nevertheless, the United States Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment.  See id. (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).

Thus, in the context of claims for inadequate medical care, the United States Court of Appeals for the Third Circuit Court has "found no reason to apply a different standard than that set forth in Estelle (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment."  See id.  As such, the Court will analyze Plaintiff's claim for inadequate medical care under the framework of the Eighth Amendment.  See id. at 582 (evaluating the pre-trial detainee's "Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment . . ." (citation omitted)).

14

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that the Eighth Amendment imposes a duty on prison officials to, inter alia, ensure that prisoners receive adequate medical care (citations omitted)). Thus, prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle, 429 U.S. at 106).

"[T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer, 511 U.S. at 837. This means that the prison official was aware of facts from which the inference could be drawn that an excessive risk of harm exists, and

the prison official must also draw that inference.  See id.  The United States Court

of Appeals for the Third Circuit ("Third Circuit") has found deliberate indifference

when a "prison official: (1) knows of a prisoner's need for medical treatment and

intentionally refuses to provide it; (2) delays necessary medical treatment based on

a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended medical treatment."  See Rouse, 182 F.3d at 197 (citation omitted).

As discussed above, in Plaintiff's original complaint, there was a complete

absence of allegations that would give rise to a plausible inference that Defendant

Betti had been personally involved in any asserted deprivation of Plaintiff's

constitutionally protected rights.  (Doc. No. 9 at 6).  As a result, the Court concluded

that, without such allegations of personal involvement, liability could not be

imposed against Defendant Betti under Section 1983, and, thus, the Court dismissed

Plaintiff's original complaint for failure to state a claim upon which relief could be

granted.  (Id.; Doc. No. 10.)

Unlike his original complaint, Plaintiff's amended complaint includes some

allegations pertaining to Defendant Betti's personal involvement in the asserted

constitutional violations.  In particular, Plaintiff alleges as follows: that Plaintiff and

his family had "begged" Defendant Betti for help; that Defendant Betti "continually

ignored" Plaintiff's pleas for help; and that Defendant Betti's staff had told Plaintiff

that, if Plaintiff continued to ask for help, his "next stop" would be a twenty-three

(23) hour confinement known as special handling.  (Doc. No. 12 at 4.)  Plaintiff has asserted these allegations against Defendant Betti in the context of other allegations that Plaintiff was receiving "improper healthcare" and that because of this, he was "forced physically into a stroke."  (Id.)

Defendant Betti argues that these allegations do not establish either element under the Eighth Amendment framework—i.e., the objective component or the subjective component.  (Doc. No. 30 at 27 (stating that these allegations do not raise any inference that "Plaintiff was denied the minimal civilized measure of life's necessities" or that Defendant Betti "exhibited a sufficiently culpable state of mind demonstrating deliberate indifference to . . . Plaintiff's-inmate health or safety").)

Having reviewed Plaintiff's amended complaint, the Court agrees with Defendant Betti that Plaintiff has failed to state a Fourteenth Amendment claim for inadequate medical care.  In particular, the Court finds that Plaintiff's amended complaint does not identify a serious medical need—i.e., the objective component of the Eighth Amendment framework.

As discussed above, "the concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences."  See Colburn, 946 F.2d at 1023.  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that

has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

Here, although Plaintiff's amended complaint alleges that he "was confined in medical housing for 50 days[,]" that his complaints of "improper healthcare" went ignored by Defendant Betti (among others), and that he "was forced physically into a stroke" (Doc. No. 12 at 4), Plaintiff's amended complaint fails to allege any sort of medical condition from which he may have been suffering. As such, Plaintiff's amended complaint does not identify a "serious medical need." In addition, Plaintiff's amended complaint fails to allege when such a medical condition manifested itself, when Defendant Betti became aware of that condition, or when Plaintiff suffered a stroke. Thus, without such additional facts, Plaintiff has not shown that Defendant Betti exhibited any deliberate indifference to a serious medical need.

Accordingly, for these reasons, the Court concludes that Plaintiff has failed to state a Fourteenth Amendment claim of inadequate medical care upon which relief can be granted against Defendant Betti. As such, the Court will grant Defendant Betti's motion to dismiss this claim.

**b.    Fourteenth Amendment Equal Protection and Due Process**

In addition to Plaintiff's Fourteenth Amendment claim of inadequate medical care, Plaintiff also asserts violations of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.  (Doc. No. 12 at 5.)  Defendant Betti argues that Plaintiff's conclusory and non-specific allegations of alleged due process and equal protection violations fail to state any valid cause of action with respect to Plaintiff's conditions at LCP or with respect to his medical treatment there.  (Doc. No. 30 at 27.)  The Court agrees.  For the sake of clarity, the Court addresses these claims separately below.

**i.    Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State . . . shall . . . deny to any person within its jurisdiction the equal protection of the laws[.]"  See U.S. Const. amend. XIV.  This is, "essentially[,] a direction that all persons similarly situated should be treated alike."  See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).

Here, however, the Court finds that neither Plaintiff's original complaint nor amended complaint assert any allegations, whatsoever, that Defendant Betti treated him differently from others who were similarly situated at LCP or that Defendant Betti otherwise denied him equal protection of the laws. Accordingly, the Court

concludes that Plaintiff has failed to state a Fourteenth Amendment equal protection claim upon which relief can be granted against Defendant Betti.  As such, the Court will grant Defendant Betti's motion to dismiss this claim.

### ii.    Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. XIV, § 1.  "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components."  See Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted).  The substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]"  See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted). And the procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property."  See Evans, 645 F.3d at 662.

Here, the Court finds that Plaintiff's amended complaint fails to plausibly allege a due process violation.  See (Doc. No. 12). In particular, Plaintiff's amended complaint does not allege that Defendant Betti deprived him of an individual interest encompassed by the Fourteenth Amendment's protection of "life, liberty, or property" or that Defendant Betti failed to provide him due process.  See (id.).

Accordingly, the Court concludes Plaintiff has failed to state a Fourteenth Amendment due process claim upon which relief can be granted against Defendant Betti.  As such, the Court will grant Defendant Betti's motion to dismiss this claim.

### B.    Defendant Wellpath's Motion to Dismiss

Defendant Wellpath has also filed a motion to dismiss, asserting several grounds upon which it argues that the amended complaint should be dismissed. (Doc. Nos. 33, 34.)   The Court will address what it deems to be Defendant Wellpath's threshold argument—that the amended complaint should be dismissed because it is vague, overbroad, and fails to state a Section 1983 claim upon which relief can be granted against Defendant Wellpath.  (Doc. No. 33 at 1, 3–5; id. at 4 (arguing, inter alia, that Plaintiff's Section 1983 claim against Defendant Wellpath "cannot be based on more respondeat superior or vicarious liability" (citation omitted).)

The United States Court of Appeals for the Third Circuit has explained that a private company, which is providing health services at a correctional facility, "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."   See Natale, 318 F.3d at 583 (footnote omitted) (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, in order for such a company to be held liable, a plaintiff must show that there was a relevant company policy or custom and that this relevant policy or custom

resulted in the asserted constitutional violations.  See id. at 583–84 (citing Bd. of Cnty. Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)).

Thus, the same question that was before the Court with respect to Plaintiff's original complaint is again before the Court with respect to Plaintiff's amended complaint—that is, whether Plaintiff's amended complaint has plausibly alleged that Defendant Wellpath had a policy or custom that resulted in a violation of Plaintiff's constitutional rights.  The Court answers this question once more in the negative. Much like Plaintiff's original complaint, Plaintiff's amended complaint has not asserted allegations concerning the existence of a relevant policy or custom, or that such relevant policy or custom resulted in a deprivation of his constitutional rights. At most, Plaintiff has alleged that he was "confined in medical housing for 50 days" and that "Wellpath nursing staff ignored" and "continually ignored" his complaints that he was receiving "improper healthcare."  (Doc. No. 12 at 4.)  Even accepting these allegations as true, they do not equate to the existence of a Wellpath policy or custom that resulted in constitutional harm to Plaintiff.

Accordingly, the Court concludes Plaintiff has failed to state a Section 1983 claims upon which relief can be granted against Defendant Wellpath.  As such, the Court will grant Defendant Wellpath's motion to dismiss Plaintiff's Section 1983 claims.  See Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017) (explaining that, "[t]o state a claim against a private corporation providing medical services under

contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue" (citing <u>Natale</u>, 318 F.3d at 583–84)); <u>Alexander v. Monroe Cnty.</u>, 734 F. App'x 801, 805 (3d Cir. 2018) (unpublished) (explaining that, in order for the administratrix of decedent-prisoner's estate to have established her claim against Prime Care, the corporation providing medical services at the county correctional facility, the administratrix would have had to have shown "'a policy or custom that resulted in the alleged constitutional violations'" (emphasis omitted) (quoting <u>Palakovic</u>, 854 F.3d at 232)).[3]

### C.   Leave to Amend

The next issue before the Court is whether Plaintiff should be granted leave to amend his amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

---

[3]   In light of this conclusion, the Court need not address Defendant Wellpath's remaining arguments that Plaintiff failed to: (a) exhaust his administrative remedies; (b) state an Eighth Amendment claim upon which relief can be granted; and (c) file a certificate of merit as it relates to any professional negligence claims.  (Doc. No. 33 at 3–10.)

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff any further leave to amend his (a) Section 1983 claims against Defendant Wellpath and (b) his Fourteenth Amendment equal protection and due process claims against Defendant Betti would be futile.  However, the Court will grant Plaintiff a **final** opportunity to amend his pleading in order to attempt to cure the deficiencies of his Fourteenth Amendment claim of inadequate medical care against Defendant Betti.  Plaintiff is advised that his second amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint, amended complaint, or any other document already filed.  Plaintiff's second amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.

Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

### D.    Plaintiff's Motions Seeking Discovery

Finally, the Court observes that Plaintiff has filed two (2) motions seeking discovery.  (Doc. Nos. 28, 40.)  The Court further observes that Plaintiff has not filed briefs in support of either one of his motions. Thus, according to Local Rule 7.5 of the Court's Local Rules, his motions are deemed withdrawn.  See M.D. Pa. L.R. 7.5 (explaining, in pertinent part, that "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion[,]" and if a supporting brief is not filed within the fourteen (14) days, "the motion shall be deemed to be withdrawn").

## IV.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant Defendants' motions to dismiss the amended complaint to the extent that Defendants' motions seek dismissal of Plaintiff's Fourteenth Amendment claims. In addition, the Court will deem Plaintiff's motions seeking discovery withdrawn.  Finally, the Court will afford Plaintiff a **<u>final</u>** opportunity to amend his pleading as to his Fourteenth

Amendment claim of inadequate medical care against Defendant Betti.   An

appropriate Order follows.


Dated: August 3, 2023                    s/ Sylvia H. Rambo
                                         SYLVIA H. RAMBO
                                         United States District Judge